599 S.E.2d 304 (2004)
267 Ga.App. 360
In the Interest of B. B., a Child.
No. A04A0575.
Court of Appeals of Georgia.
May 11, 2004.
*305 Kelley A. Dial, Cartersville, for appellant.
Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Neel & Smith, Barry S. Haney, Cartersville, for appellee.
RUFFIN, Presiding Judge.
In December 2002, the juvenile court found B.B. to be deprived and granted custody to the Bartow County Department of Family and Children Services (DFACS). On September 8, 2003, the juvenile court entered an order extending its prior order, and the mother appeals. According to the mother, the juvenile court erred in considering her testimony after she had been declared incompetent. The mother also asserts that the juvenile court erred in refusing to allow her to proceed pro se.[1] For reasons that follow, we affirm.
1. On appeal from a juvenile court's finding of deprivation, we view the evidence "in the light most favorable to [that] court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived."[2] Viewed in this light, the record demonstrates that DFACS obtained emergency custody of B.B. pursuant to a shelter care order after her mother was evicted from the motel in which she had been living. Shortly thereafter, DFACS filed a deprivation petition asserting that the mother remained without stable housing or employment and that there were questions regarding the mother's mental health.
During the deprivation hearing, questions arose regarding the mother's competency to assist in her own defense. Accordingly, the juvenile court ordered that the mother undergo a competency evaluation and stayed the proceedings. When the hearing resumed over a month later, Dr. William Moon testified that, after examining and testing the mother, he diagnosed her with, inter alia, a delusional disorder, psychotic tendencies, and an antisocial personality disorder. Dr. Moon also stated that the mother "confus [ed] reality and fantasy."
Based upon the mother's mental instability, lack of stable housing, and lack of employment, the juvenile court determined that B.B. was deprived. The court further found that the mother was not competent, and it ordered the mother's appointed attorney to continue representation unless the mother obtained new counsel. Finally, the juvenile court set forth required elements for the mother's reunification plan, including that the mother (1) obtain all psychological testing and treatment required, (2) maintain stable housing, (3) obtain employment, (4) complete parenting classes, (5) visit B.B. regularly, and (6) cooperate with DFACS.
In August 2003, DFACS petitioned the juvenile court to extend its custody order in which it found B.B. to be deprived. At the hearing, a DFACS caseworker testified that the mother had neither obtained counseling nor found stable housing. In fact, the mother had recently moved into a trailer with a man she had known only for a few months.[3] DFACS was unable to verify that the mother had any source of income, and the man with whom the mother lived testified that she paid no rent. Although DFACS referred the mother to local parenting classes, the mother failed to attend.
*306 Against her attorney's advice, the mother testified on her own behalf, asserting that she had obtained both a residence and employment. The mother also testified that she had not taken part in parenting classes and had no intention of paying child support. She maintained that she was "not in agreement" with the case plan and that the plan was "illegal."
Based in part on the mother's failure to comply with the reunification plan, the juvenile court extended its prior deprivation order. On appeal, the mother argues that the juvenile court erred in considering her testimony in reaching its decision because she had already been found to be incompetent.
In order for error to warrant reversal, an appellant must show harm as well as error.[4] Thus, implicit in the mother's argument is the assumption that, had the juvenile court not considered her testimony, she would have prevailed. This assumption is not well founded as, even without the mother's testimony, ample evidence supported the juvenile court's decision to extend the deprivation order.
Under Georgia law, a child is deprived if he or she "is without proper parental care or control, subsistence, [or] education as required by law, or [lacks] other care or control necessary for the child's physical, mental, or emotional health or morals."[5] "This definition focuses upon the needs of the child regardless of parental fault. The deprivation petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue."[6] Here, the mother's failure to adhere to the reunification plan-including her failure to obtain counseling, stable housing, or employment-supported the juvenile court's decision extending its previous order.[7]
Moreover, we are not persuaded that the juvenile court was required to disregard the mother's testimony notwithstanding her alleged incompetence. The crux of the juvenile court's inquiry was the mother's competence as a parent. It seems illogical to preclude a trial court from considering the mother's testimony for this purpose.[8] Thus, this enumeration of error lacks merit.
2. The mother also contends that the juvenile court erred in refusing to allow her to proceed pro se. We disagree.
Indigent parties are entitled to appointed counsel at a deprivation hearing.[9] However, this right may be waived if the waiver is both knowing and voluntary.[10] The trial court apparently determined that, given its incompetency finding, the mother was unable to make such knowing and voluntary waiver. Moreover, the mother has failed to establish that she was harmed by her counsel's representation. And, without harm, the alleged error presents no basis for reversal.[11]
Judgment affirmed.
ELDRIDGE and ADAMS, JJ., concur.
NOTES
[1] Despite the mother's apparent wish to proceed pro se, she is represented on appeal by the same attorney who represented her at the hearing below.
[2] (Punctuation omitted.) In the Interest of B.M. B., 241 Ga.App. 609, 527 S.E.2d 250 (1999).
[3] The man testified that he began helping the mother at the request of a minister and that the two did not share a room in the trailer.
[4] See In the Interest of C. B., 258 Ga.App. 143, 148(3), 574 S.E.2d 339 (2002).
[5] (Punctuation omitted.) In the Interest of J. P., 253 Ga.App. 732, 734, 560 S.E.2d 318 (2002) (citing OCGA § 15-11-2(8)(A)).
[6] (Punctuation omitted.) Id.
[7] See In the Interest of D.N. B., 258 Ga.App. 481, 484-485(1), 574 S.E.2d 574 (2002); In the Interest of P.O. M., 255 Ga.App. 534, 535-536(1), 566 S.E.2d 334 (2002); In the Interest of N.M. H., 252 Ga.App. 353, 357, 556 S.E.2d 454 (2001).
[8] See Dorminy v. Russell, 182 Ga. 635, 639-640(2), 186 S.E. 679 (1936) ("the incompetency of a witness may be proved by the witness [herself]") (punctuation omitted).
[9] See OCGA § 15-11-6(b); In the Interest of B.C. P., 229 Ga.App. 111, 115-116(3), 493 S.E.2d 258 (1997).
[10] See Crawford v. State, 240 Ga. 321, 323(1), 240 S.E.2d 824 (1977).
[11] See In the Interest of C. B., supra.