**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 28, 2023**

# In the Court of Appeals of Georgia

A23A0355. IN THE INTEREST OF K. B., et al., children.

MCFADDEN, Presiding Judge.

Stephen Boyd, the father of two minor children, appeals from a juvenile court order finding the children to be dependent in that they have been neglected and are in need of the protection of the court. Boyd challenges the sufficiency of the evidence supporting the juvenile court's dependency finding. Because the finding was supported by clear and convincing evidence, we affirm.

1. *Sufficiency of the evidence.*

"On appeal from a [juvenile] court's finding of dependency, we review the record in the light most favorable to the [juvenile] court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the children were dependent." *In the Interest of K. D.*, 344 Ga. App. 423, 424

(810 SE2d 193) (2018). "In making this determination we neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that the juvenile court's primary responsibility is to consider and protect the welfare of a child whose well-being is threatened." *In the Interest of R. D.*, 346 Ga. App. 257, 259 (1) (816 SE2d 132) (2018) (citation and punctuation omitted).

So viewed, the record shows that the Georgia Department of Human Resources first became involved with the children in 2019 after law enforcement officers reported that the eight-months-old twins had been left alone in their home for an unknown period of time. The juvenile court entered a dependency removal order, finding that at the time of the incident, the mother was under the influence of drugs; she refused to return home because Boyd, the children's putative father, had stolen her marijuana; and Boyd, who also used drugs, refused to submit to drug screening. In October 2019, the juvenile court entered an order awarding temporary custody of the children to the Department and placing the children with a caregiver, finding that the mother had stipulated to the children's dependency and that evidence of such dependency included drug use by the parents and domestic violence between them. The Department created a family case plan requiring, among other things, that Boyd

take a DNA test to establish paternity and that he legitimate the children; that he complete parental fitness, domestic violence, substance abuse, and psychological evaluations; that he follow all recommendations of such evaluations; that he maintain a stable, safe, and drug-free home; and that he maintain stable employment.

After a DNA test established that Boyd was the children's biological father, the juvenile court granted his petition to legitimate the children. In March 2021, the juvenile court entered a consent order after a hearing at which Boyd was represented by his attorney. The consent order found that the Department had provided Boyd with the reunification case plan, which the court approved and adopted. The consent order found that the Department had made referrals for Boyd to complete parental fitness, domestic violence, substance abuse, and psychological assessments required by the plan; and that the Department had also made agency referrals for him to complete drug screening and counseling services. Boyd, however, failed to participate in any of the case plan services and had failed to participate in visitation with the children. The consent order further found that Boyd had pending criminal charges for aggravated assault, battery, and criminal trespass. The Department also had been unable to verify Boyd's housing and employment because he failed to provide requested documentation and would not schedule time for a home visit. The consent

3

order concluded that the children continued to be dependent in that they were without proper parental care or control.

In December 2021, the Department filed a dependency petition as to Boyd. At the adjudication hearing, the Department presented evidence that Boyd had refused the Department's attempts to help him complete his case plan's assessments, services, and drug screenings. Boyd claimed that he was not on drugs and that he had taken a drug test, but admitted that the results of that test had come back "dirty." There was some evidence that the father was employed at a booth in a mall, but the Department maintained that his employment and income had not been verified because of issues about the validity of a purported pay-stub provided by Boyd. The evidence also showed that the children's mother was the alleged victim of two incidents giving rise to Boyd's arrests and pending criminal charges. Boyd had also failed to provide child support since legitimating the children.

> Under Georgia law, the juvenile court may place a minor child in the protective custody of the Department where the [s]tate shows, by clear and convincing evidence, that the child is a dependent child. As relevant here, OCGA § 15-11-2 (22) (A) defines a dependent child as a child who, among other things, has been . . . neglected and is in need of the protection of the court.

4

*In the Interest of A. M. B.*, 361 Ga. App. 551, 554-555 (a) (864 SE2d 713) (2021) (citations, punctuation, and footnote omitted). "'Neglect' is defined as the failure to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for a child's physical, mental, or emotional health or morals. OCGA § 15-11-2 (48) (A)." *In the Interest of T. Y.*, 357 Ga. App. 189, 196 (1) (850 SE2d 244) (2020) (punctuation omitted). The lack of stable employment and income is a proper consideration for dependency. *In the Interest of J. S.*, 295 Ga. App. 861, 864 (673 SE2d 331) (2009). And when a child is not in the custody of a parent, "[a]mong the grounds on which a juvenile court may find a child dependent due to lack of proper parental care and control [is] . . . a parent's failure, without justifiable cause, . . . to comply with a court ordered plan designed to reunite such parent with his or her child." *In the Interest of A. S.*, 339 Ga. App. 875, 878 (794 SE2d 672) (2016) (citations and punctuation omitted). See OCGA § 15-11-311 (b) (3). See also *In the Interest of T. Y.*, supra (juvenile court is not required to reunite a child with a parent in order to obtain current evidence of dependency or neglect).

In the instant case, the juvenile court found by clear and convincing evidence that Boyd has refused to engage with the Department since the children came into the Department's care in 2019; that he continued refusing to cooperate with the

Department after the children were legitimated in 2021; that he has failed to comply with the consent-ordered case plan designed to reunify the family, including assessments and services for substance abuse, domestic violence, and parental fitness; and that despite his claims of employment, he has failed to provide tax forms or bank statements showing such employment. See *In the Interest of C. E.*, 366 Ga. App. 612, 621-622 (4) (884 SE2d 22) (2023) (parent's refusal to cooperate with the case plan hampers ability to assess parental fitness and ability to supervise child). Given the clear and convincing evidence in this case, the juvenile court's "findings that the [father] failed to [cooperate with the Department to] complete [his] case plan[ and] that the children were dependent as a result of the lack of proper parental control and care by the [father] . . . were supported by the record." *In the Interest of L-M. C. L.*, 362 Ga. App. 520, 531 (3) (869 SE2d 161) (2022). See also *In the Interest of M. M.*, 315 Ga. App. 673, 676-678 (2) (727 SE2d 279) (2012) (evidence of lack of stable employment, parent's arrests, refusal to follow case plan, and failure to support children established dependency). We note that purported conflicts in the evidence cited by Boyd do not provide a basis for finding the evidence to be insufficient since we do not weigh the evidence or judge the credibility of the witnesses, which were matters for the juvenile court sitting as fact-finder. See *In the Interest of R. D.*, supra.

6

2. *Welfare of the children.*

Boyd makes an additional claim that the juvenile court erred in finding that returning the children to his custody would be contrary to their welfare. But "[t]he same circumstances that authorized the juvenile court to determine . . . that the children were [dependent] due to lack of proper parental care and control . . . further provided clear and convincing evidentiary support for the conclusion that [returning custody to Boyd was contrary to the welfare of] the children." *In the Interest of T. W. O.*, 283 Ga. App. 771, 777 (1) (a) (iv) (643 SE2d 255) (2007). As the juvenile court found, the evidence showed that Boyd had failed to cooperate with the Department since 2019, to provide documentation of employment, and to otherwise complete the case plan which "outlines the services needed for the children to be placed in his home." See OCGA § 15-11-134 (b) (order continuing child's placement outside parent's physical custody based on finding that returning child to such custody would be contrary to his or her welfare). Under these circumstances, the trial court did not err in finding that the father's "failure to take the steps necessary to reunite with [his] children was sufficient to satisfy this requirement." *In the Interest of T. W. O*, supra (noting that children need permanence of home and stability).

*Judgment affirmed. Brown and Markle, JJ., concur.*

7